ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2010 DEC -7 PM 4:25

| | | |
|---|---|---|
| OCTAVIO REYES-MORALES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-074 |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, MCRAE CORRECTIONAL | ) | |
| FACILITY, and WALT WELLS, Warden,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, a federal inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, brought the above-captioned petition under 28 U.S.C. § 2241. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that the Federal Bureau of Prisons ("BOP"), Corrections Corporation of America ("CCA"), and MCF be **DISMISSED** from this case. The Court further **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

### I. BACKGROUND

Petitioner was convicted in the United States District Court for the Western District

---

[1]For the reasons explained below, the **CLERK** is **DIRECTED** to add "Walt Wells, Warden" as a respondent in this case. See infra Part II.A.

of North Carolina of possession of methamphetamine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1), as well as possession of a firearm during a drug crime, in violation of 18 U.S.C. § 924(c). (Doc. no. 1, p. 2; doc. no. 13, p. 4.) On June 5, 2007, he was sentenced to 101 months of imprisonment, followed by four years of supervised release. (Doc. no. 1, p. 2; doc. no. 13, p. 4.) Additionally, the sentencing court instructed that Petitioner was to surrender to an immigration official for removal upon release from confinement. (Doc. no. 13, p. 4 & Ex. 1.) As noted above, Petitioner is currently incarcerated at MCF. (Doc. no. 1, p. 2.)

The instant petition concerns Petitioner's refusal to participate in MCF's Literacy Program and the resultant reduction in the amount of Good Conduct Time ("GCT") applied to his sentence. At the commencement of Petitioner's incarceration, he completed an orientation program, during which he was informed of the educational requirements applicable to federal prisoners who have not earned a high school diploma or equivalent degree. (Doc. no. 13, p. 5 & Ex. 2.) Petitioner initially agreed to participate in the Literacy Program and acknowledged that failure to make adequate progress in the Program would result in a reduction of his GCT. (Id. at 5 & Exs. 3, 4.) On July 18, 2008, Petitioner withdrew from the Literacy Program,[2] and as a result began to accrue a reduced amount of

---

[2] Respondent maintains that prison staff advised Petitioner that his withdrawal from the Program would result in a loss of GCT, but that he decided to withdraw anyway, as evidenced by his execution of a document stating that he does not agree to re-enroll in the Literacy Program and understands the effect that his decision will have on his GCT. (Doc. no. 13, p. 5 & Ex. 5.) Petitioner acknowledges that he intended to withdraw from the Program, but alleges that a member of MCF's educational staff made him sign the document by threatening punishment unless he signed the required paperwork. (Doc. no. 1, p. 3.)

GCT.³ (Id. at 5; doc. no. 1, p. 3.)

Petitioner contends that his status as a sentenced deportable alien exempts him from required participation in the Literacy Program, and he asserts that his refusal to participate in the program should not result in a loss of GCT. (See generally doc. no. 1.) Respondent argues that the reduction of Petitioner's GCT is proper in light of his failure to participate in the Literacy Program. (See generally doc. no. 13.)

Petitioner has filed grievances relating to this reduction in his GCT and has appealed the denials of those grievances. (See doc. no. 2, pp. 3-18.) Respondent concedes that Petitioner appears to have exhausted his administrative remedies. (Doc. no. 13, p. 9 & Ex. 10.)

In addition, the Court notes that the parties have made assertions regarding the particularities of Petitioner's immigration status, which they contend is relevant to questions relating to his participation in the Literacy Program and GCT awards. Petitioner asserts that he is a "sentenced deportable alien," as evidenced by his September 16, 2008 Program Review Report and his ineligibility for pre-release programs. (Doc. no. 1, p. 5; doc. no. 2, p. 19.) Respondent acknowledges, as noted above, that Petitioner was directed by the sentencing judge to surrender to immigration officials upon release. (Doc. no. 13, p. 4.) However, Respondent disputes Petitioner's claimed status of sentenced deportable alien, and emphasizes that the Bureau of Immigration and Customs Enforcement ("BICE") has neither

---

³Based on Petitioner's refusal to participate in the Literacy Program, the maximum allowable GCT available to him was reduced from 54 to 42 days of GCT for each year served. Thus, the GCT at issue in this case is the 14 day difference per year for the period following Petitioner's withdrawal from the Literacy Program, which purportedly totaled 67 days of GCT as of the filing of the instant petition. (Doc. no. 1, p. 2.)

3

lodged a detainer against Petitioner nor issued a final order for his deportation. (Id. at 6, 12.)

## II. DISCUSSION

### A. Proper Respondent

Petitioner named the BOP, CCA, and MCF as Respondents in this case. However, none of these are proper respondents because, in a habeas proceeding, the case or controversy is between the person in custody and his custodian. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."); Wacker v. Bisson, 348 F.2d 602, 605 (5th Cir. 1965). Thus, Walt Wells, Petitioner's custodian by virtue of his position as Warden at MCF, is the proper Respondent. See note 1, supra. Therefore, the Court **REPORTS** and **RECOMMENDS** that the BOP, CCA, and MCF be **DISMISSED** from this case.

### B. Loss of GCT Due to Failure to Participate in Literacy Program

The primary issue in this case is whether the BOP may refuse to award Petitioner the maximum allowable GCT because of his failure to participate in the Literacy Program at MCF. For the reasons set forth below, the Court concludes that it may.

Before addressing Petitioner's specific contentions, the Court will first examine the GCT statute and the BOP's relevant regulations and policies.

#### 1. Applicable Statutes and Regulations

When Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), it amended the provision governing GCT to provide that prisoners

> may receive credit toward the service of the prisoner's sentence, beyond the

4

> time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations..... [I]f the [BOP] determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the [BOP] determines to be appropriate.

18 U.S.C. § 3624(b)(1). In determining whether and how much GCT should be awarded to a prisoner, Congress also directed, "In awarding credit under this section, the [BOP] *shall* consider whether the prisoner, during the relevant period, has earned, or is making *satisfactory progress toward earning a high school diploma or an equivalent degree.*" Id. (emphasis added). In keeping with this dictate, Congress has mandated that the BOP must provide a "General Educational Development ["GED"] program for inmates who have not earned a high school diploma or its equivalent." Id. § 3624(b)(3). However, Congress has also provided, "Exemptions to the [GED] *requirement* may be made as deemed appropriate by the Director of the [BOP]." Id. § 3624(b)(4) (emphasis added).

The BOP has promulgated regulations that govern GCT in accordance with the congressional mandates set forth in § 3624(b). Under these regulations, an inmate who has earned or is making satisfactory progress toward a GED credential or highschool diploma is eligible for up to 54 days of GCT for each year served. 28 C.F.R. § 523.20(c)(1). An inmate who does not meet these criteria, on the other hand, is only eligible for a maximum of 42 days of GCT for each year served. Id. § 523.20(c)(2). These regulations further provide that "an alien who is subject to a final order of removal, deportation, or exclusion is eligible for, but is not required to, participate in a literacy program, or to be making satisfactory progress

5

toward earning a [GED] credential, to be eligible for a yearly award of good conduct time." Id. § 523.20(d).

The BOP has also promulgated regulations governing an "adult literacy program." 28 C.F.R. § 544.70 *et seq*. With certain exceptions, inmates who do not have a GED or a high school diploma are required to participate in such a program for a minimum of 240 hours or until they obtain a GED, whichever occurs first. Id. § 544.70. One of the enumerated exceptions to this requirement is that "sentenced deportable aliens," among others, "are not required to attend the literacy program." Id. § 544.71(a)(3). Sentenced deportable aliens who do not attend a literacy program cannot be subjected to disciplinary action for opting out of the program. See id. §§ 544.71(a) & 544.75.

In addition, the BOP has fleshed out this regulatory framework with Program Statements ("PS") that apply to GCT awards and Literacy Program participation. PS 5884.03 details the procedures for awarding GCT under 18 U.S.C. § 3624 and 28 C.F.R. § 523.20, and provides, "An inmate alien subject to a final order of removal, deportation, or exclusion will earn GCT at the annual rate of 54 days," though such award "is subject to disciplinary forfeiture or disallowance." PS 5884.03 §§ 7(e) & (f). In its summary of the changes effected by revising the previous Program Statement dealing with GCT, the BOP makes clear that the primary change put into effect in the new version of this Program Statement is "to exempt aliens subject to a final order of removal, deportation, or exclusion from the 'satisfactory progress in a literacy program' provision of the PLRA." Id. § 2.

Also relevant to the issues at hand is PS 5350.28, which covers the Literacy Program[4] and elaborates on the provisions of 28 C.F.R. § 544.70 *et seq.* This Program Statement reiterates the Literacy Program participation requirement and the exemption for "sentenced deportable aliens." PS 5350.28 §§ 1 & 8 (quoting 28 C.F.R. §§ 544.70 & 544.71). In addition, it defines the term "sentenced deportable alien" to include inmates who are either (1) "assigned a Public Safety Factor 'H' status of 'Alien'" or (2) "under a final [BICE] order of deportation, exclusion, or removal." Id. § 9(c). Furthermore, it specifically addresses the question of how "the sentenced deportable alien exemption affect[s] the good conduct time of these inmates[.]" Id. § 9(d). Specifically, it states that:

> Although sentenced deportable aliens are exempt from attending the literacy program for the mandated 240 instructional hours, they are still subject to the satisfactory progress literacy provision of . . . the PLRA. To . . . be eligible for the maximum amount of GCT, deportable aliens without a verified high school diploma or GED who are sentenced under . . . the PLRA must meet the satisfactory progress provision of [§ 3624(b)(1) of the PLRA].

Id.[5]

---

[4]Confusion arises from the slight differences between the terminology used in the statute, the regulations, and the Program Statements in reference to what amounts to the same educational program. The "GED program" mentioned in 18 U.S.C. § 3624(b), the "adult literacy program" from 28 C.F.R. § 544.70, and the "Literacy Program" referenced throughout PS 5350.28 all refer to essentially the same thing. For ease of reference, the Court will hereinafter use the term "Literacy Program."

[5]To be clear, being subject to a final order of removal, deportation, or exclusion is not the same thing as being a sentenced deportable alien under the BOP's regulatory framework. The former is a sufficient, but not a necessary, condition for the latter. In other words, according to a the BOP's definition, an inmate who has been subjected to a final deportation order qualifies as a sentenced deportable alien, but it is possible to be a sentenced deportable alien without being subjected to final deportation order (*e.g.*, by being an alien who has been classified with a Public Safety Factor of "Alien" but has not been subjected to a final deportation order). See PS 5350.28 § 9(c).

7

In sum, Congress has granted the BOP considerable discretion in deciding whether and how to award GCT to prisoners. See 18 U.S.C. § 3624(b). The BOP has exercised that discretion by promulgating regulations and program statements that control how GCT is awarded. Under these rules, inmates are generally required to have earned or be making satisfactory progress toward a high school diploma or GED to be eligible for the maximum 54 days of GCT per year served. See 28 C.F.R. § 523.20; PS 5884.03. The way for inmates to satisfy this "satisfactory progress" requirement is to participate in the Literacy Program. The BOP has exempted sentenced deportable aliens from the Literacy Program. See 28 C.F.R. § 544.70 *et seq.*; PS 5350.28. This exemption does not, however, guarantee them eligibility for the full 54 days per year of GCT – it merely ensures that they will not be disciplined for failure to participate in the program. 28 C.F.R. §§ 544.71(a) & 544.75. The BOP has created a separate exemption for "aliens subject to a final order of removal, deportation, or exclusion." PS 5884.03 §§ 2 & 7(e)-(f). Inmates in this category have apparently been made exempt from the Literacy Program as well as the satisfactory progress requirement, such that they will continue to accrue 54 days of GCT per year irrespective of whether they participate in the Literacy Program. See id.[6]

---

[6]The Court recognizes the potential conflict between PS 5350.28 and PS 5884.03. PS 5350.28 provides that an inmate who is subject to final deportation order qualifies as a sentenced deportable alien, but that such an inmate is not entitled to the maximum GCT award of 54 days per year if he refuses to participate in the Literacy Program or make satisfactory progress toward a GED; rather, he is merely shielded from discipline. PS 5884.03 exempts inmates subject to a final deportation order from the "satisfactory progress" requirement, and apparently provides that such inmates will receive the maximum GCT award of 54 days per year regardless of whether they participate in the Literacy Program or meet the "satisfactory progress" requirement. This conflict would only need to be resolved, however, in the case of an inmate who is subject to a final deportation order, yet is denied the 54 day per year GCT award. As explained below, Petitioner is not subject to

## 2. The BOP Correctly Applied Its Regulations to Petitioner

In the instant case, Respondent has followed these BOP regulations and Program Statements. At the commencement of his incarceration, Petitioner was made aware of the requirement that he participate in the Literacy Program and the consequences that failure to participate would have on his GCT award. Petitioner chose to discontinue his participation in the Literacy Program, at which point MCF staff again explained that his withdrawal would reduce his GCT award.[7] As a result of his withdrawal from the Literacy Program, Petitioner began to accrue 42, rather than 54, days of GCT per year.

While Petitioner repeatedly asserts his status as a sentenced deportable alien, he does not contend that he has been subject to a final order of removal, deportation, or exclusion. Neither his classification by prison officials nor the sentencing requirement that he report to immigration officials constitutes such a final order, which must come from BICE. See PS 5350.28 § 9(c) (referring to final deportation order as document issued by BICE). Furthermore, the documents submitted by the parties relating to Petitioner's confinement and immigration status do not show any such final order. (See doc. no. 2, pp. 19-24; doc. no. 13, Ex. 1-11.)

Assuming, without deciding, that Petitioner is a sentenced deportable alien despite

---

a final order of deportation, making it unnecessary for the Court to address the potential conflict between these Program Statements.

[7]While Petitioner asserts that he was coerced into signing the statement acknowledging that he understood the consequences of withdrawal, he does not dispute that those consequences were explained to him. (See doc. no. 1, p. 3.) Moreover, during the initial part of his incarceration, Petitioner signed another document acknowledging that he understood the consequences of withdrawal from the Literacy Program, and he does not allege any coercion with regard to that document. (See doc. no. 13, p. 5 & Ex. 2.)

the fact that he is not subject to a final deportation order, the BOP's decision to reduce his award of GCT from 54 to 42 days is permissible, as PS 5350.28 makes clear that deportable aliens must still participate in the Literacy Program to be eligible for the 54 day per year maximum GCT award. While being a sentenced deportable alien prevents an inmate from being disciplined for failure to attend the Literacy Program, the reduction of GCT for Literacy Program nonparticipation is different from the reduction of GCT for disciplinary purposes. See PS 5884.03 (distinguishing between GCT reduction due to Literacy Program nonparticipation and GCT reduction due to discipline). Accordingly, Respondent has not erred in its application of the BOP's regulations and Policy Statements to Petitioner's case.

### 3. The BOP's Regulations and Policy Statements Survive Judicial Review

Because the BOP's regulations and policy statements constitute an agency's interpretation of a statute that it administers, the Court must uphold the BOP's regulations if they give effect to the unambiguously expressed Congressional intent behind the statute or present a reasonable interpretation of an ambiguous statute. See Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984); Barber v. Thomas, ___ U.S. ___, 130 S. Ct. 2499, 2509 (2010) ("No one doubts that the BOP has the legal power to implement [18 U.S.C. § 3624(b)] in accordance with its language and purposes . . . .").

Here, the BOP's regulations and Program Statements give effect to the unambiguous intent of Congress expressed in 18 U.S.C. § 3624(b). In accord with § 3624, the BOP has a Literacy Program that allows inmates to earn or make satisfactory progress toward a high school diploma or GED, and the BOP considers whether an inmate is participating in the

Literacy Program in determining the amount of GCT to award. By its terms, § 3624 does not exempt deportable inmates, like Petitioner, from the "satisfactory progress" requirement. Id. Of course, § 3624 does empower the BOP to exempt certain inmates from *mandatory* participation in its educational programs. 18 U.S.C. § 3624(b)(4) & (f)(5). In accordance with §3624, the BOP has decided to exempt deportable inmates like Petitioner from mandatory participation in the Literacy Program, but nevertheless to take away 12 days of GCT per year from inmates who choose not to participate, regardless of their status as a sentenced deportable alien.

Moreover, this regulatory scheme is reasonable. Section 3624 mandates the creation of a GED/Literacy Program, but allows the BOP to make exceptions to its education requirements. 18 U.S.C. §§ 3624(b)(3) & (4). It also instructs the BOP, when awarding GCT, to "consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree." Id. § 3624(b)(1). In accordance with these statutory mandates, the BOP's policy encompasses the maintenance of a Literacy Program. The BOP's decision to exercise its discretion to exempt a certain class of inmates from required participation in that program does not require it to forego consideration of whether those inmates are making progress toward earning a GED in making GCT awards.

In sum, the BOP's policy of allowing sentenced deportable aliens to opt out of the Literacy Program at the cost of losing 12 days of GCT per year is entirely consistent with the statute. Because the BOP has given effect to Congress' express intent, the regulations and policies at issue are adequate to survive judicial review. Chevron, 467 U.S. at 842-43.

Furthermore, even if the statute were ambiguous, the BOP's interpretation would be entitled to deference, and as such would be upheld, since the BOP's interpretation of the statute, as explained above, is reasonable. See id. at 844-45. Petitioner's contention that the BOP's policies constitute an impermissible construction of the statute is therefore without merit.

### 4. Petitioner's Due Process Rights Have Not Been Violated

Petitioner's claim that his loss of GCT constitutes a violation of his Fifth Amendment Due Process rights is also without merit. To prevail on such claim, Petitioner would have to show (1) that he has been deprived of a protected liberty interest and (2) that the process he was given was insufficient. Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976). Here, Petitioner can show neither.

Prison regulations may create liberty interests protected by the Due Process Clause. Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974). "However, if there is no government-created right to the inmate's requested relief, then procedural due process is not implicated." Travieso v. Fed. Bureau of Prisons, 217 F. App'x 933, 935 (11th Cir. 2007) (citing Sandin v. Connor, 515 U.S. 472, 487 (1995)). Here, for the reasons discussed above, neither federal law nor the applicable regulations create a right to the GCT that Petitioner seeks to have applied to his sentence. See supra Parts II.B.1 & II.B.2. Therefore, Petitioner does not have a liberty interest in the 12 days per year of GCT that he seeks, as his failure to participate in the Literacy Program precludes any entitlement to that GCT.

Even if Petitioner had a protected liberty interest in the GCT at issue, he was provided adequate process. He was notified that failure to participate in the Literacy Program would

12

result in the loss of his annual GCT award,[8] given ample opportunity to challenge the reduction in his GCT award through the administrative grievance procedures, and provided with a written explanation of why his grievances were denied at every step of the process. (See doc. no. 2, pp. 3-18; doc. no. 13, Exs. 4, 5, 10.) Thus, the process afforded Petitioner was adequate to satisfy the Due Process Clause. See Mathews, 424 U.S. at 332-35; Travieso, 217 F. App'x at 935 (holding that "the BOP's administrative remedy process provided . . . any required due process"); see also Delgado-Ortiz v. Holencik, 2010 U.S. Dist. LEXIS 28533, at *10-11 (C.D. Cal. Jan. 27, 2010) (holding that the BOP's notice and grievance procedures satisfied due process where inmate's GCT was reduced for failure to participate in the Literacy Program); Holman v. Cruz, 2008 U.S. Dist. LEXIS 115731, at *11 (D. Minn. Oct. 23, 2008) (same).

For these reasons, Petitioner has not established a violation of his right to due process under the Fifth Amendment.

---

[8]The Court's analysis does not hinge on whether Petitioner was in fact forced to sign the acknowledgment that he understood the effect that withdrawal from the Literacy Program would have on his GCT award, as he alleges. (Doc. no. 1, p. 3.) By that point, Petitioner had already been notified that withdrawing from the program would reduce the amount of GCT for which he was eligible, as evidenced by the form signed upon the commencement of his incarceration. (See doc. no. 13, p. 5 & Ex. 4.)

13

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the BOP, CCA, and MCF be **DISMISSED** from this case. The Court further **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 7th day of December, 2010, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE